UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:21-CR-80060-RLR

**UNITED STATES OF AMERICA**

vs.

**JOEL BARRETT,**

    **Defendant.**

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR

The government files this response to the defendant's objections to the PSR.

1)   The defendant claims that the Mini Draco firearm described in paragraphs 4-7 of the PSR is not a firearm. Even assuming for the sake of argument that it "was jammed and did not work," the firearm still meets the definition of a firearm under the Guidelines and federal statutes, which state that a "firearm" means "(i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) **the frame or receiver of any such weapon**; (iii) any firearm muffler or silencer; or (iv) any destructive device." (emphasis added). See U.S.S.G. Section 1B1.1 Application Note 1(H). The government is prepared to present testimony that the Mini Draco meets the definition of a firearm.

2)   The defendant claims that no chemical tests were conducted for fentanyl that was found in his home, which is referenced in paragraph 9 of the PSR. The government submits this issue is moot because it was not part of the total drug weight used for the total offense level in the PSR.

3)   The defendant claims that the "mixture of heroin and cocaine" referenced in paragraph 18 of the PSR should not be included as part of the drug weight. The government is prepared to

1

present evidence that the lab reports in this case confirm the facts in the PSR and that this case did in fact involve a mixture of heroin and cocaine, but this issue may not matter since it does not affect the total offense level.

4) The defendant argues that the two-level enhancement for possession of a firearm should not apply and that he should also receive safety valve, which would grant him a two-level reduction and no mandatory minimum sentence. The government agrees with the PSR, that the firearm enhancement should apply and that safety valve should **not** apply.

The two-level enhancement applies to both the Glock pistol in the closet and to the sale of the Mini Draco to the UC with a sample of drugs "because a dangerous weapon was possessed," pursuant to Section 2D1.1(b)(1) of the Guidelines. Application Note 11 states that "The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." To justify a firearms enhancement, the government must establish by a preponderance of the evidence either (1) that a "firearm was present at the site of the charged conduct," or (2) "that the defendant possessed a firearm during conduct associated with the offense of conviction." *Stallings*, 463 F.3d. at 1220. The government must show "some nexus beyond mere possession between the firearms and the drug crime." *Id*. at 1221. However, the government is not required to prove that the firearm was used to facilitate the distribution of drugs for the firearms enhancement to apply; **its mere presence during the drug offense is sufficient**. *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001) (emphasis added). **Evidence of "proximity between guns and drugs**, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." *United*

*States v. Carillo-Ayala*, 713 F.3d 82, 91–92 (11th Cir. 2013) (emphasis added). Other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, but there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The firearm's potential use is critical. *Id*. at 92. If the government meets its initial burden, the burden then shifts to the defendant to show "that a connection between the weapon and the offense was clearly improbable." *Stallings*, 463 F.3d at 1220 (quotation omitted). "The § 2D1.1(b)(1) enhancement ... places a heavy burden of negation on the defendant." *Carillo-Ayala*, 713 F.3d at 90.

The loaded Glock pistol mentioned in paragraph 9 of the PSR qualifies for this enhancement because it was found in defendant's closet, the same closet where heroin and meth was found. In *United States v. Cash*, 2023 WL 166454 (11th Cir. 2023) (unreported), the Eleventh Circuit, under similar facts, held that the two-level firearm enhancement applied and safety valve did not, saying:

> On the day of Cash's arrest, federal agents searched his residence and found a loaded handgun and approximately seven grams of methamphetamine in a safe in his upstairs master bathroom. Cash argues that the government did not meet its initial burden because it was "never able to demonstrate [a] 'nexus' between [Cash's] mere possession of the firearm and his drug crimes." That argument is doomed from the start. As this Court has made clear, "[p]roximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)." *United States v. Carrasquillo*, 4 F.4th 1265, 1272 (11th Cir. 2021) (quoting Carillo-Ayala, 713 F.3d at 91). While Cash is correct that "a drug offender possess[ing] a firearm does not necessarily give rise to the firearms enhancement," one who stores a firearm in the same location as his drugs bears the burden of showing that the two are not connected.
>
> [As to safety valve], Cash has pointed to some evidence that might call into question the presence or purpose of his firearm, he has not shown that it is "more likely than not" that a loaded handgun found mere inches from illegal drugs in his bathroom safe was not possessed "in connection with" his drug sales.

*United States v. Cash*, 2023 WL 166454 at *3.

3

The same can be said of the Mini Draco firearm that the defendant sold to an undercover agent along with a sample of drugs at the same time during the same transaction, during which the defendant said that he had 1.5 kilograms of heroin at his residence.  Facts similar to this have been upheld by the Eleventh Circuit as qualifying for the two-level enhancement. For example, in *United States v. Brand*, 509 F. App'x 846, 848 (11th Cir. 2013) (unreported), the Court held:

> Brand had sold cocaine base and a firearm to an undercover officer in the same transaction, thereby fulfilling the parties' earlier agreement. The firearm sale thus constituted an essential part of that particular drug sale. Although Brand's firearm possession need not have facilitated the drug offense, the firearm sale may have facilitated the drug sale by allowing Brand to become a single source for crack and firearms, or facilitated his relationship with the undercover detective, a known drug buyer.

*Id.* at 848.

As to safety valve, the government maintains that the defendant does not qualify for safety valve because the defendant did "possess a firearm . . . in connection with the offense" under Title 18, United States Code, Section 3553(f).  The government agrees that under the current state of the law under *United States v. Garcon*, --- F.4th ---- (11th Cir. Dec. 6, 2022), were it not for the firearms in this case, the defendant would in fact qualify for safety valve (his criminal history does not bar him, nor do the other factors).   However, the two firearms described in the PSR bar the application of safety valve in this case.  Safety valve allows for a two-level reduction in a defendant's offense level and directs the court to "impose a sentence ... without regard to any statutory minimum sentence, if the court finds that the defendant meets the [five] criteria in 18 U.S.C. § 3553(f)(1)–(5)." U.S.S.G. § 5C1.2(a); see U.S.S.G. § 2D1.1(b)(18). Among those criteria is the requirement that the defendant did not "possess a firearm or other dangerous weapon ... in connection with the offense," § 3553(f)(2); § 5C1.2(a)(2), which he must establish by a

4

preponderance of the evidence, *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013). While a defendant who receives a firearm enhancement under § 2D1.1(b)(1) is not automatically precluded from safety-valve relief, he "must show that it is more likely than not that [his] possession of the firearm was not in connection with the offense." *United States v. Carrasquillo*, 4 F.4th 1265, 1272 (11th Cir. 2021).

As discussed above, the defendant cannot show that it is "more likely than not" that a loaded handgun found mere inches from illegal drugs in his bathroom safe was not possessed "in connection with" his drug sales.

5) The defendant argues that the two-level enhancement for "maintaining a premises" under Section 2D1.1(b)(12) should not apply. The government is willing to agree that this enhancement should **not** apply, based on the totality of circumstances and the factors listed in Application Note 17 of Section 2D1.1 of the Guidelines.

        Respectfully submitted,

        MARKENZY LAPOINTE
        UNITED STATES ATTORNEY
        By:/s/ Marton Gyires
        MARTON GYIRES
        ASSISTANT UNITED STATES ATTORNEY
        A#5501696
        Email: marton.gyires@usdoj.gov
        500 South Australian Avenue, Suite 400
        West Palm Beach, FL 33401
        Telephone: 561-209-1047

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit notification to all parties of record.

/s/ Marton Gyires
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY